**FIRST CITY, TEXAS–HOUSTON, N.A., Plaintiff,**

v.

**RAFIDAIN BANK and Central Bank of Iraq, Defendants.**

**No. 90 CIV. 7360(JSR).**

United States District Court, S.D. New York.

Nov. 8, 2000.

Peter V. Baugher, Schopf & Weiss, Chicago, IL, for plaintiff.

Edward Powers, Richards & O'Neil, New York City, for Central Bank of Iraq.

Jonathan Sinnreich, Sinnreich Wasserman & Grubin LLP, New York City, for Rafidain Bank.

### OPINION AND ORDER

RAKOFF, District Judge.

The uneven course of this case has taken some further odd turns. Previously the Court had held defendant Rafidain Bank ("Rafidain") in civil contempt for failure to provide plaintiff First City, Texas–Houston, N.A. ("First City") with discovery sought in connection with First City's claim that co-defendant Central Bank of Iraq ("Central Bank") was the "alter ego" of Rafidain (a commercial bank) and therefore not entitled to sovereign immunity. While waiting in vain for Rafidain to purge its contempt, First City sought similar discovery from another source by serving a subpoena duces tecum on the law firm Richards & O'Neil, LLP, present counsel to Central Bank but former counsel to Rafidain. Richards & O'Neil moved to quash the subpoena, but before that motion could be finally resolved, Rafidain, which had effectively absented itself from these proceedings for many years, reappeared through new counsel, Sinnreich, Wasserman & Grubin, LLP ("SW & G"), and moved to vacate the contempt order. First City responded by serving on SW & G, as Rafidain's agent,

both a subpoena duces tecum seeking Rafidain-related financial information and a restraining notice seeking to restrain certain of Rafidain's assets. In turn, Rafidain, through SW & G moved to vacate both the subpoena and the restraining notice. Because all these motions bear upon each other, the Court discusses and resolves them collectively in the instant Opinion and Order.

The pertinent facts, already the subject of several prior opinions of this Court,[1] and the Court of Appeals,[2] are summarized as follows. In February 1989, First City, an American bank, agreed to loan nearly $50 million to Rafidain, a commercial bank wholly owned by the Republic of Iraq. In August 1990, after Iraq, in connection with the Kuwaiti War, repudiated its foreign debts, Rafidain defaulted on repayment of the loan. First City then commenced this suit against defendants Rafidain and Central Bank, arguing that as "alter egos of each other" both were liable on the loan. Complaint, ¶ 3.[3] Neither defendant appeared or answered, and on April 26, 1991 the Court (per Martin, J.) entered a default judgment against Rafidain in the amount of approximately $53.2 million and a declaratory judgment against both defendants declaring that the approximately $21.4 million in the bank accounts that Rafidain and Central Bank held with First City could be set off against the Rafidain default judgment. This Order was a final judgment, from which no appeal was taken by either party.

A year later, however, on April 24, 1992, both defendants moved before Judge Martin to set aside the judgment on grounds of improper service, sovereign immunity, and excusable neglect. Finding that the service on Central Bank had been improper, Judge Martin vacated the judgment as to Central Bank, but denied any relief as to Rafidain. *See First City, Texas–Houston, N.A. v. Rafidain Bank*, 1992 WL 296434 (S.D.N.Y. Oct. 6, 1992). No appeal was taken by Rafidain from this denial, and, indeed, Rafidain effec-tively abandoned the litigation from that point until this year.

Meanwhile, First City, finding itself unable to satisfy its judgment against Rafidain, sought reimbursement from the United States Government (pursuant to certain arrangements arising from the Kuwaiti War) and succeeded in recovering $55 million. Nevertheless, because of interest and other charges, this recovery did not fully make First City whole. In early 1994, First City re-served Central Bank with the Amended Complaint in this case, and this time service was proper. In response, Central Bank moved to dismiss on the ground of sovereign immunity (a ground raised, but not reached, in connection with Judge Martin's earlier order). As previously, First City countered by arguing that, so far as the underlying transactions here in issue were concerned, Central Bank had acted, not as a branch of a sovereign government, but as the "alter ego" of Rafidain, which, as Judge Martin had previously determined, was a commercial bank that fell outside the protections of sovereign immunity. *See* Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a). In support of this "alter ego" theory, First City requested, and Judge Martin granted, certain limited discovery, pursuant to which First City propounded discovery requests to both Central Bank and Rafidain. Only Central Bank responded, however, and so, on May 11, 1996, First City filed a motion seeking to compel responses from Rafidain, as well as broader discovery from Central Bank. Central Bank, for its part, renewed its motion to dismiss on the ground of sovereign immunity.

With these motions pending, the case was reassigned from Judge Martin to Judge Jones and, thereafter, in early 1997, to the undersigned. On March 27, 1997, the Court, after hearing oral argument, denied First City's motion for broader discovery from Central Bank, and granted Central Bank's

1. *See, e.g., First City, Texas–Houston, N.A. v. Rafidain Bank*, 68 F.Supp.2d 377, 378–79 (S.D.N.Y. 1999); *First City, Texas–Houston, N.A. v. Rafidain Bank*, 1992 WL 296434 (S.D.N.Y. Oct. 6, 1992).

2. *See First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 173–75 (2d Cir.1998).

3. Plaintiffs filed an Amended Complaint on December 18, 1990 but the essential allegations did not change.

motion to dismiss on the ground of sovereign immunity, finding that First City had failed to make an adequate showing that Central Bank was the alter ego of Rafidain. *See* transcript of hearing of Mar. 26, 1997, at 20–23. As no one appeared on behalf of Rafidain, the Court took no action on First City's motion to compel discovery from Rafidain. Indeed, since no relief had ever been granted from the default judgment previously entered against Rafidain, the Court was under the impression that Rafidain was no longer in the case. Accordingly, the Court simply entered judgment dismissing Central Bank. *See* Judgment, Mar. 31, 1997.

On appeal from that judgment, however, the Court of Appeals reversed, holding that the District Court should not have rejected First City's alter ego theory without first permitting First City to "conduct full discovery against Rafidain" on the question of whether Central Bank was Rafidain's alter ego. Unlike the limited discovery permitted against Central Bank, such full discovery was justified against Rafidain, the Court of Appeals held, "[b]ecause Rafidain is a party to this suit, has been found to fit within the FSIA's 'commercial activity' exception and because First City has a judgment against Rafidain ...." *First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 177 (2d Cir.1998).

Following remand, First City served on Rafidain (in the contested manner described below) a subpoena duces tecum ad testificandum dated September 14, 1998 (the "1998 Rafidain Subpoena") seeking both documentary and testimonial evidence on the "alter ego" issue. Receiving no response from Rafidain, First City asked the Court to hold Rafidain in civil contempt and impose a sanction of $1,000 per day to continue until such time as Rafidain purged its contempt. Despite being given ample opportunities to respond—extending over nearly a year—Rafidain chose not to do so. Accordingly, on November 1, 1999, the Court granted First City's motion and held Rafidain in civil contempt. *See First City, Texas–Houston, N.A.*

*v. Rafidain Bank*, 68 F.Supp.2d 377, 379 (S.D.N.Y.1999).

Meanwhile, First City, effectively rebuffed in its efforts to obtain discovery from Rafidain on the issue of whether Central Bank was the "alter ego" of Rafidain, sought to explore alternative sources of discovery. First, it claimed that it was now entitled to broader discovery from Central Bank than had previously been permitted, but this application was denied by the Court as overly intrusive and contrary to the Court of Appeal's prescription that discovery from a presumptively sovereign entity like Central Bank should be limited and circumspect. *Id.* at 379; *see First City*, 150 F.3d at 176.[4] Next, First City served a subpoena duces tecum on Richards & O'Neil, claiming that, notwithstanding its role as counsel to Central Bank, Richards & O'Neil had, either as a result of its former representation of Rafidain or otherwise, come into possession of nonprivileged materials obtained from Rafidain that would bear on the alter ego question. An initial subpoena—patently overbroad—was voluntarily withdrawn by First City at the suggestion of the Court, but First City then served a second subpoena duces tecum on Richards & O'Neil (the "Richards & O'Neil Subpoena") that remains outstanding. Richards & O'Neil responded with a motion to quash.

Shortly thereafter—mirabile dictu—Rafidain, through new counsel SW & G, suddenly appeared on June 21, 2000 and moved to vacate the contempt order against it. First City responded by serving upon SW & G, as agent for Rafidain, a subpoena duces tecum and restraining notice dated June 23, 2000 (the "2000 Rafidain Subpoena and Restraint") seeking, pursuant to Rule 69, Fed. R.Civ.P., post-judgment discovery and restraint of assets in aid of enforcing the default judgment previously entered against Rafidain. Rafidain, in turn, moved to vacate the 2000 Rafidain Subpoena and Restraint on the ground of improper service.

---

**4.** Central Bank, for its part, renewed its original motion for dismissal on the basis of sovereign immunity, but the Court denied the motion, without prejudice, on the ground that Rafidain might yet seek to purge its contempt and provide discovery that could support plaintiff's "alter ego" theory. *See First City*, 68 F.Supp.2d at 380.

Presently pending before the Court, therefore, are (i) Rafidain's motion to vacate the contempt order and quash the 1998 Rafidain Subpoena; (ii) Richards & O'Neil's motion to quash the Richards & O'Neil Subpoena; and (iii) Rafidain's motion to vacate the 2000 Rafidain Subpoena and Restraint. The Court considers each in turn:

(i) *Rafidain's Motion to Vacate the Contempt Order And Quash the 1998 Rafidain Subpoena.*

In moving to vacate the Court's order of November 1, 1999 holding Rafidain in civil contempt for failure to comply with the 1998 Rafidain Subpoena, Rafidain argues, first and foremost, that the Court lacked authority to impose such an order because Rafidain by that time was no long a party to this lawsuit and was exempt under the FSIA from being subject to third-party discovery. The first premise of the argument is effectively foreclosed, however, by the Court of Appeal's express finding that "Rafidain is a party to this suit" and that "the district court is instructed to permit First City to conduct full discovery against Rafidain." *First City,* 150 F.3d at 177. While Rafidain was not a party to the appeal in which the Court of Appeals made these determinations and therefore may have a basis in some future appeal for asking the Court of Appeals to reconsider its conclusions in this regard, it would exceed the power of this lower court to disregard these clear and unequivocal determinations of the Court of Appeals. The Court therefore finds, in compliance with the Second Circuit's ruling, that Rafidain remains a party to this action. As a result, moreover, Rafidain's additional argument about the limitations of jurisdiction over non-party sovereign entities is rendered irrelevant, since Rafidain is not a non-party.

Rafidain's fallback argument is that service of the 1998 Rafidain Subpoena was improper and ineffective. As indicated in the Rider to that subpoena, it was purportedly served pursuant to Federal Rule of Civil Procedure

45 and/or to Section 6 of the Loan Agreement between the parties. *See* Rider to 1998 Rafidain Subpoena, Affidavit of Jonathan Sinnreich, Esq. ("Sinnreich Aff."), sworn to June 24, 2000, Ex. E. Rafidain argues that service was ineffective under either prong. But the argument fails, for three reasons.

■ First, Rafidain does not claim that it lacked actual notice of the 1998 Rafidain Subpoena at the time served or that it lacked actual notice of the repeated opportunities this Court afforded Rafidain to appear and challenge the subpoena before being held in contempt. Yet it neither appeared nor challenged either the contempt order or service of the subpoena until nearly a year after the contempt order had issued and more than 21 months after Rafidain learned that the subpoena had been served. In these circumstances, Rafidain has waived any objection to the manner of service. *Cf. Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61 (2nd Cir. 1999).

■ Second, Rafidain does not claim that it lacked actual knowledge of the Court of Appeals' decision in this case, dated July 16, 1998, which determined that Rafidain was a party to this preceding and must provide full discovery to First City of the kind generally sought by the 1998 Rafidain Subpoena. As a party, Rafidain was subject to providing such discovery pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure. Service of the 1998 Rafidain Subpoena— which, among other things, was served on the only law firm that had ever appeared for Rafidain up to that time, *i.e.* Richards & O'Neil—more than met the requirements of service on a party. See Rule 5(b), Fed. R.Civ.P. (authorizing service upon attorneys for represented parties by means of either personal delivery or mail).[5] Under these circumstances, Rafidain had to know, notwithstanding the language of the Rider invoking Rule 45, Fed.R.Civ.P., that it was being noticed as a party to produce the dis-

---

**5.** While a Rule 45 subpoena is typically used to obtain the production of documents and/or testimony from a non-party to an action (whereas Rules 26–37 provide simpler means for obtaining the same from a party), nothing in the Federal Rules of Civil Procedure explicitly precludes the use of Rule 45 subpoenas against parties. *See, e.g., Badman v. Stark,* 139 F.R.D. 601, 603 (M.D.Pa.1991) ("Rule 34 applies only to parties to the lawsuit, while a subpoena under Rule 45 may be served upon both party and non-party witnesses.").

covery ordered by the Court of Appeals, and its disregard of this notice constituted civil contempt.

▮▮▮ Third, in any event, the service was valid under Rule 45 and the Loan Agreement. The latter provides that Rafidain Bank "irrevocably appoints" the Iraqi Permanent Representative in New York as its agent to accept service of process. Rafidain's process server attempted to serve the 1998 Rafidain Subpoena on an employee at the Iraqi Mission but was rebuffed, after which he attached the subpoena to the door of the Mission, in an addressed envelope, and mailed another copy to Rafidain's only counsel of record at the time, the law firm of Richards & O'Neil. *See* Sinnreich Aff., Ex. E; First City's Response to Rafidain's Motion to Vacate Contempt Order, at 8. This was sufficient in the circumstances to comply with Rule 45, *see, e.g., Cordius Trust v. Kummerfeld*, 2000 WL 10268, at *1 (S.D.N.Y. 2000); *Hinds v. Bodie*, 1988 WL 33123, at *1 (E.D.N.Y.1988), especially since, as noted, Rafidain does not deny that it received timely actual notice of the subpoena, *see First Nationwide Bank v. Shur*, 184 B.R. 640, 642 (Bankr.E.D.N.Y.1995); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997).[6]

*(ii) Richards & O'Neil's Motion to Quash the Richards & O'Neil Subpoena.*

The decision of the Court of Appeals directed the district court to first permit full discovery against Rafidain and only "after such discovery" was completed to then determine "whether further discovery against Central Bank on the jurisdictional question is warranted." *First City*, 150 F.3d at 177. Accordingly, discovery of any documents that Richards & O'Neil holds in its capacity as Central Bank's attorney or agent is, at a minimum, premature and the Richards & O'Neil Subpoena must be quashed to the extent it seeks such materials.

By contrast, discovery must be permitted of those relevant materials that Richards & O'Neil received in connection with its prior representation of Rafidain, except as such materials are protected by privilege or work product. Based on the affirmations of Richards & O'Neil as to the nature, scope, and timing of its prior representation of Rafidain, such production will be limited to materials dated no earlier than 1985 and no later than 1990, which, unless subject to claims of privilege or work product must be produced to First City's counsel by December 1, 2000. If claims of privilege or work product are asserted with respect to any such materials, a corresponding privilege list must be furnished to the Court and First City's counsel by no later than December 15, 2000 and the materials therein listed must by that date be furnished to the Court in chambers for its *in camera* inspection.

*(iii) Rafidain's Motion to Vacate the 2000 Rafidain Subpoena And Restraint.*

Rafidain objects to the 2000 Rafidain Subpoena and Restraint on the ground of improper service. This objection, however, must be considered in light of the fact that, as indicated above, Rafidain remains a party to this action and Rafidain's new counsel, SW & G, has entered a general appearance in this case for all purposes. *See* Affidavit of Jonathan Sinnreich, Esq., dated "June" (actually July) 7, 2000, at ¶ 3; transcript of hearing of June 26, 2000, at pages 4–6. These facts are significant because Rule 5(b) of the Federal Rules of Civil Procedures requires that "[whenever] ... service is required or permitted to be made upon a party represented by an attorney the service *shall* be made upon the attorney unless service upon the party is ordered by the Court" (emphasis added). Moreover, Rule 5(b) authorizes such service to be made either by "delivering a copy to the attorney" or "by mailing it to the attorney."

▮▮▮ With respect to the subpoena portion of the 2000 Rafidain Subpoena and Restraint,

---

**6.** While Rafidain also attacks the failure of First City to tender witness fees along with the subpoena, the Court concludes that the appropriate remedy in these circumstances is not to quash the subpoena in its entirety but simply to modify its scope by eliminating the requests for testimo-

ny (the only part of the subpoena to which the witness fees relate), without prejudice to First City's subsequently seeking testimony through future notices. *See, e.g., Northrop Corporation v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C.Cir.1984).

**256**

First City properly sought post-judgment discovery under Rule 69, Fed.R.Civ.P., which provides that such discovery may be obtained "in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." Thus when Rule 69 discovery is sought from a party represented by an attorney, service may proceed either under Rule 5(b) of the Federal Rules of Civil Procedure or under the rules of service established in the relevant state. Here, it is undisputed that First City mailed the 2000 Rafidain Subpoena and Restraint to the offices of SW & G by overnight delivery. *See* Memorandum of Law in Support of Motion to Vacate Plaintiff's Subpoena Duces Tecum and Restraining Notice, at 15. First City thus clearly availed itself of the Rule 5(b) method of service. The Court therefore concludes that service of the subpoena portion of the 2000 Rafidain Subpoena and Restraint was proper. Since Rafidain has not made any objection to the subpoena requests themselves (as opposed to the manner in which the subpoena was served), the Court finds that such discovery should proceed promptly.

 As for the Restraining Notice served along with the 2000 Rafidain Subpoena, Rafidain argues that it must be vacated under § 1610(c) of the FSIA, which provides: "No attachment or execution [upon a foreign sovereign or instrumentality] . . . shall be permitted until the court has ordered such attachment and execution . . . ." 28 U.S.C. § 1610(c). First City concedes that it failed to seek such a court order before serving the Restraining Notice. *See* First City's Response to Rafidain's Motion to Vacate Subpoena and Restraining Order, at 4. Consequently, the Restraining Notice must be vacated, but without prejudice to its being renewed upon appropriate motion to the Court.

In sum, the Court hereby (a) denies Rafidain's motion to vacate the contempt order against it and to quash the 1998 Rafidain Subpoena; (b) grants in part and denies in part the motion of Richards & O'Neil to quash the Richards & O'Neil Subpoena; and (c) grants in part and denies in part Rafi-

dain's motion to vacate the 2000 Rafidain Subpoena and Restraint.

SO ORDERED.